# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY CAESAR,<br><br>        Plaintiff,<br><br>    v.<br><br>LOPEZ, et al.<br><br>        Defendants. | Case No. 1:13-cv-01726-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 82)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff Danny Caesar is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. This case proceeds on Plaintiff's second amended complaint against Defendants Patel, Lopez, and Kongara for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and against Defendant Patel for retaliation in violation of the First Amendment.

On September 11, 2018, Defendants Kongara, Lopez, and Patel filed a motion for summary judgment on the grounds that Defendants are entitled to judgment as a matter of law because there are no genuine issues of material fact, and Defendants are entitled to qualified immunity.[1] (ECF No. 17.) On October 3, 2018, Plaintiff filed his opposition to Defendants' motion for summary

---
[1] Concurrent with this motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1988); Klingele v. Eikenberry, 849 F.2d 409, 411–12 (9th Cir. 1988). (ECF No. 82-1.)

1

judgment. (ECF No. 86.) Defendants filed a reply on October 10, 2018. (ECF No. 87.) The motion is deemed submitted. Local Rule 230(l).

## II.     Legal Standard

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Id.

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." Id. (citing Celotex, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id.

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. Id. at 929; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation

omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." Soremekun, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." Anderson, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987). Further, the Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.  Discussion**

   **A.  Summary of Factual Allegations of Plaintiff's Second Amended Complaint**

The events in the complaint are alleged to have occurred while Plaintiff was housed at Kern Valley State Prison ("KVSP"). Plaintiff names the following as Defendants in this action: (1) Dr. Ismael Patel, KVSP Primary Care Physician; (2) Dr. Nanditha Kongara, KVSP Primary Care Physician; and (3) Lopez, KVSP Chief Medical Officer.

Plaintiff alleges as follows:

> First, the PCPs continue to[] refuse to accept the fact that I suffer from Frostbite Residuals. Accordingly, they severely undertreat my condition, thereby

leaving me to live with con[s]tant wanton infliction of unnecessary pain, and thus rejecting and rescind[ing] my already approved ADA status. This action was then seconded, if not lead, by CMO Lopez, on 2-4-13.

Secondly, I qualified for ADA status when I requested transfer to a Medical Facility, one I beleive (*sic*) would be more sympathetic to my overall disease's overall symptoms, as opposed to a minimum pain aide only. It is this deprivation that caused me discrimination, that I beleive (*sic*) was intentional, and specifically designed to[] deny me an ADA program that I would otherwise qualify for.

(ECF No. 40, at 3.) Additionally, Plaintiff alleges that:

Although I had never seen Dr. Nanditha before, while filling in for regular Primary Care Provider (PCP) Dr. Patel, on 2-1-13, she decided to both deny my request to be put up for a new coming Medical Facility, at Stockton California, and take my ADA and wheelchair chronos.

On approximately 10-10-12; acting on the recommendations of a Prison Law Office representative, which had recently visited me for a legal visit, and recommended that I should file a 602 if the PCP refuse to allow me to see a neurologist, Dr. Patel again refused me a neurology consult. I told him I would appeal and he politely told me that if I did, he would take my wheelchair; which is exactly what happened on 2-4-13, without explanation.

Together, these doctors, along with others involved with the 602 processes; 602 Appeals Coordinators, other PCPs and their subsequent examinations, and even the director, are all working in concert for California Department of Corrections and Rehabilitation, in an effort to[] deny me ADA status and protections.

(ECF No. 40, at 4.) Finally, Plaintiff asserts that:

The doctors have determined that I have no frostbite residuals, and thereby indifferent to my medical needs, as they relate to the popularly known symptoms associated with my disease: irregardless to the various V.A. doctors' determination to the contrary. Accordingly, they have stripped me of my ADA status, for the sole purpose of discriminating and denying me ADA programs: medical facility in Stockton; shower; recreation yard; religious services; cold/cool weather accommodations, wheelchair, ect (*sic*).

(ECF No. 40, at 3.)

///

///

///

///

4

**B.    Undisputed Material Facts (UMF)[2]**

1. At all times relevant to this action, Plaintiff was in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was confined at KVSP. (Defendants' Ex. A, pp. 2, 5–6.)

2. At all times relevant to this action, Defendants were employed by CDCR and worked at KVSP in the following positions: Defendants Patel and Kongara were primary care providers/physicians, and Defendant Lopez was the Chief Medical Officer. (Second Am. Compl., ECF No. 40, at 3.)

3. Plaintiff claims that, in December 1976, he was diagnosed with frostbite while serving with the United States Army in Germany. (Deposition of Danny Caesar, at 14:9–15 & 17:15–19.)

4. In February 2010, while housed at Pelican Bay State Prison, Plaintiff was evaluated by Dr. Williams for a claimed disability—that he had frostbite in his feet in 1976 and, now, he has pain with prolonged standing and walking. Dr. Williams observed that Plaintiff was not in any distress and ambulates while bending over. Dr. Williams further observed that Plaintiff's feet were warm, he had good pulses in his feet, he had brisk capillary refill in his toes, he had good vibratory sense to his toes, and that he had good sensation to a 20-pound line test to the tops and arches of both feet, but not to the balls of both feet. Dr. Williams opined that Plaintiff's claim of disability was not verified because, while pain is a subjective complaint that is difficult to evaluate, Plaintiff had no positive objective findings to substantiate his claims. Nevertheless, Dr. Williams found that Plaintiff was disabled and granted Plaintiff a wheelchair, low bunk, and low tier chronos because Plaintiff refused to walk generally and would not walk more than 100 yards without stopping. (Defendants' Ex. A, p. 7 & Ex. C, pp. 219–20.)

---

[2] ECF No. 82-3. Plaintiff did not provide a separate statement of undisputed facts in his opposition. Local Rule 260(a). As a result, Defendants' Statement of Undisputed Material Facts in support of their motion for summary judgment is accepted except where brought into dispute by Plaintiff's verified second amended complaint and Plaintiff's verified opposition to Defendant's summary judgment motion. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified pleadings and motions may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). Unless otherwise indicated, disputed and immaterial facts are omitted from this statement.

5. On August 25, 2011, while Plaintiff was housed at California State Prison, Corcoran, Dr. Moon denied Plaintiff's request for a chrono not to be exposed to temperatures below 60 without extra protection from the elements because, while Plaintiff has a history of frostbite, his feet are basically unremarkable—warm, no deformity, dorsalis pedis pulses positive bilaterally—other than his subjective pain and sensitivity to temperature. (Defendants' Ex. C, p. 182.)

6. Plaintiff arrived at KVSP on April 2, 2012. (Defendants' Ex. A, p. 6.)

7. Plaintiff saw Defendant Dr. Patel on May 21, 2012. Defendant Patel noted that Plaintiff claimed he had frostbite in 1977 and, while he was able to walk, Plaintiff stated that he had difficulty walking due to pain for the last two years. Defendant Patel noted that Plaintiff's feet were normal, with basically no deformity. (Defendants' Ex. C, p. 159.)

8. On October 10, 2012, Plaintiff submitted a CDCR 602 HC Patient/Inmate Health Care Appeal, contending that Defendant Patel has denied Plaintiff's continuous requests for a referral to a neurologist due to the worsening effects of his peripheral neuropathy due to frostbite residuals. (Defendants' Ex. C, pp. 277–78.)

9. On October 31, 2012, Dr. Akanno interviewed and evaluated Plaintiff in relation to his October 10, 2012 administrative health care appeal. Dr. Akanno stated that he had thoroughly reviewed Plaintiff's unit health records and noted had been diagnosed with frostbite in December 1976. Further, Dr. Akanno noted that Plaintiff had also been diagnosed with peripheral neuropathy (small fiber type) while he was at Pelican Bay State Prison, and that Plaintiff was currently on Tegretol and using a wheelchair. Dr. Akanno's evaluation of Plaintiff revealed that Plaintiff had no ulcers, no edema, and a few calluses on both feet. Monofilament testing showed that Plaintiff had patchy areas of sensory loss on both feet, with the loss greater on the left foot than the right foot. Dr. Akanno diagnosed Plaintiff with peripheral neuropathy, possibly secondary to frostbite or to a Vitamin B12/folate deficiency. Dr. Akanno determined that a neurology referral was not indicated at this time and he denied Plaintiff's request for a referral to neurology. Instead, Dr. Akanno referred Plaintiff to physical therapy and podiatry. (Defendants' Ex. C, pp. 138, 281.)

10. On November 28, 2012, Plaintiff saw Defendant Patel again, after Plaintiff was referred for determination of work restrictions and physical limitations. Plaintiff contended that he has residuals of frostbite and he wanted extra clothing due to cold temperatures. Defendant Patel found that Plaintiff was able to stand and walk, and hop off the examination table without difficulty. Further, Defendant Patel stated that Plaintiff had no difficulty taking off his shoes and socks. During the examination of Plaintiff's feet, Defendant Patel noted that Plaintiff had dry skin, his toenails were thick and deformed, but that Plaintiff had no skin breakdowns or fissures. Further, Defendant Patel found that there were no significant findings in the neurological exam of Plaintiff's feet. Finally, Defendant Patel stated that the etiology of Plaintiff's foot pain was unclear because the physical examination of Plaintiff's feet appeared to be normal. (Defendants' Ex. C, p. 135.)
11. On January 22, 2013, Plaintiff submitted a CDCR 7362 Health Care Services Request form, asking to have Defendant Patel re-examine him and find him to be a medically high-risk patient so that he would qualify to be transferred to the newly opened Stockton, California medical facility. (Defendants' Ex. C, p. 133.)
12. On February 1, 2013, Plaintiff was seen by Defendant Dr. Kongara in relation to his request to be re-examined. Defendant Kongara noted that Plaintiff was able to stand up to get his weight checked without any assistance and with no balance problems seen, that his gait was within normal limits, that he had good muscle strength and bulky muscular lower extremities, that Plaintiff was able to kick his legs out, wriggle his toes, and move his ankle up and down, and that no rashes were seen on Plaintiff's skin, but Plaintiff's toenails were thick and discolored. Defendant Kongara found that Plaintiff did not have any medical condition that qualifies him to transfer to Stockton and that, since Plaintiff had strong lower extremities, he did not need a wheelchair. Defendant Kongara notified custody that Plaintiff could walk to his cell. (Defendants' Ex. C, pp. 130–31.)
13. Plaintiff has no personal knowledge whether Defendant Patel ever told Defendant Kongara about Defendant Patel's threat to take away Plaintiff's wheelchair, but that he believes that the threat and the removal of his wheelchair are connected because Defendant Kongara did

exactly what Defendant Patel said he was going to do, and Plaintiff has not seen Defendant Kongara since that day. (Defendants' Ex. B, Deposition of Danny Caesar, at 50:17–51:19.)

14. On February 5, 2013, Plaintiff filed a CDCR 1824 Reasonable Modification or Accommodation Request asking to keep his wheelchair as a matter of medical necessity and to be reconsidered for transfer to the Stockton facility. (Defendants' Ex. C, pp. 288–89.)

15. On February 20, 2013, Dr. Akanno interviewed and evaluated Plaintiff in relation to his February 5, 2013 administrative health care appeal. Dr. Akanno found that a physical exam of Plaintiff failed to properly establish any strong physical limitations as Plaintiff had strong lower extremities and no peripheral neuropathy. Accordingly, Dr. Akanno denied Plaintiff's requests to keep his wheelchair as a medical necessity and to transfer to Stockton facility. (Defendants' Ex. C, pp. 125–26.)

16. On February 22, 2013, Defendant Kongara authored a CDCR 1845 Disability Placement Program Verification form, stating that, since no physical limitations were found on exam, Plaintiff's claimed disability was not confirmed, and Plaintiff was removed from the entire Disability Placement Program. S. Paeth, not Defendant Lopez, reviewed, and signed, the CDCR 1845 form. (Defendants' Ex. C, p. 117.)

17. Plaintiff acknowledges that his wheelchair was not permanently taken away at that point, and that he was only without a wheelchair for a few months between 2013 and 2016. (Defendants' Ex. B, Deposition of Danny Caesar, at 47:2–48:6, 53:22–54:4.)

18. While at KVSP, Plaintiff received medication to treat his foot pain, including Carbamazepine 400 mg twice per day, Acetaminophen 650 mg up to twice per day, and Salsalate 500 mg tablet up to four times per day. (Defendants' Ex. C, pp. 256, 258, 265, 270, 275–76.)

**C.  Analysis of Defendants' Motion**

    1.  <u>Deliberate Indifference to Serious Medical Needs</u>

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference

8

to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (citation omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985. Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06).) "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cty. of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

///

"A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow, 681 F.3d at 987. "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

### a. *Defendants Patel and Kongara*

In his second amended complaint, Plaintiff asserts that Defendants Patel and Kongara were deliberately indifferent to his serious medical needs. Initially, Plaintiff contends that both Defendants Patel and Kongara acted with deliberate indifference by failing to diagnose Plaintiff with frostbite residuals. (ECF No. 40, at 3.) Further, Plaintiff contends that Defendants Patel and Kongara acted with deliberate indifference by failing to properly treat Plaintiff's frostbite residuals. (Id. at 3-4.) Specifically, Plaintiff asserts that Defendant Patel acted with deliberate indifference when he denied Plaintiff's requests to be referred to a neurologist, and that Defendant Kongara acted with deliberate indifference when she rescinded Plaintiff's wheelchair chrono and removed Plaintiff from the Disability Placement Program. (Id. at 3–4.)

Here, Defendants Patel and Kongara do not challenge Plaintiff's assertion that his foot pain was a serious medical need. Instead, Defendants Patel and Kongara contend that they are entitled to summary judgment because they were not deliberately indifferent regarding his purported frostbite residuals. Additionally, Defendants Patel and Kongara assert that they were not deliberately indifferent to Plaintiff's foot pain when Defendant Patel denied Plaintiff's requests to be referred to a neurologist and when Defendant Kongara rescinded Plaintiff's wheelchair chrono and removed Plaintiff from the Disability Placement Program.

According to the evidence submitted by Defendants Patel and Kongara, Plaintiff was diagnosed with frostbite while serving with the U.S. Army in Germany in December 1976. (UMF No. 3.) In February 2010, while housed at Pelican Bay State Prison, Plaintiff was evaluated by Dr. Williams, who opined that, since Plaintiff had no positive objective findings to substantiate his claims and pain is a subjective complaint that is difficult to evaluate, Plaintiff's claim of disability—

that he had pain with prolonged standing and walking due to his prior frostbite—was not verified. (UMF No. 4.) On May 21, 2012, Defendant Patel noted that, while Plaintiff stated that he had difficulty walking due to pain for the last two years, on examination, Plaintiff's feet were normal, with basically no deformity. (UMF No. 16.) On October 31, 2012, Dr. Akanno evaluated Plaintiff and diagnosed Plaintiff with peripheral neuropathy, possibly secondary to frostbite or to a Vitamin B12/folate deficiency, but found that a neurology referral was not indicated at that time. (UMF No. 20.) On November 28, 2012, Defendant Patel saw Plaintiff and noted that Plaintiff was able to stand, walk, take off his shoes and socks, and hop off the examination table without difficulty. Further, Defendant Patel observed that, while Plaintiff's feet had dry skin and thick, deformed toenails, there were no significant findings in the neurological exam of Plaintiff's feet. Defendant Patel opined that the etiology of Plaintiff's foot pain was unclear because the physical examination of Plaintiff's feet appeared to be normal. (UMF No. 21.) On February 1, 2013, after observing Plaintiff stand up from his wheelchair to get his weight checked without any assistance or visible balance problems, that Plaintiff's gait was within normal limits, that Plaintiff had good muscle strength, and that Plaintiff was able to kick his legs out, wriggle his toes, and move his ankle up and down, Defendant Kongara determined that Plaintiff did not need a wheelchair and notified custody that Plaintiff could walk to his cell. (UMF No. 23.) On February 22, 2013, Defendant Kongara authored a CDCR 1845 Disability Placement Program Verification form stating that Plaintiff's claimed disability was not confirmed and that, therefore, Plaintiff was removed from the entire Disability Placement Program. (UMF No. 28.)

      The Court finds that Defendants Patel and Kongara have provided sufficient evidence to satisfy Defendants' initial burden of demonstrating that they were not deliberately indifferent in diagnosing and treating Plaintiff's foot pain. Each Defendants examined Plaintiff on one or more occasions, made objective findings based upon their examinations, and determined an appropriate course of treatment based upon their examinations. The burden, therefore, shifts to Plaintiff to establish a genuine dispute of material fact regarding whether Defendants were deliberately indifferent in diagnosing and treating Plaintiff's foot pain.

      Plaintiff contends that the Defendants refused to properly diagnose and treat Plaintiff's foot

pain for what it is: frostbite residuals and peripheral neuropathy. He contends that this case is not merely a simple dispute about treatment options. Plaintiff argues that he has established a genuine issue of material fact regarding whether Defendants Patel and Kongara were deliberately indifferent for failing to diagnose and treat him for frostbite residuals. Plaintiff provided medical records that he has been previously diagnosed with frostbite residuals and peripheral neuropathy. He contends that through medical knowledge he has gained on his own, he believes that his frostbite residuals condition has now progressed to the third-degree level, and that he cannot get medical treatment, except for Tegretol, which is ineffective for treating his pain.

Plaintiff's medical records do not raise an issue of fact that Defendants were deliberately indifferent in failing to properly diagnose and treat Plaintiff. First, Plaintiff's medical records do not diagnose him with frostbite residuals and neuropathy. The medical records show that, at various times, Plaintiff has been diagnosed with various conditions affecting his feet – neuromas, Taylor's bunions, with and without bursitis and kerotomas, ingrown toenails, bone spurs, and corns. Further, while Plaintiff has provided the Court with one page of a December 21, 2004 neurology consultation report that states that Plaintiff has been diagnosed with peripheral neuropathy, the report does not state that Plaintiff's peripheral neuropathy is caused by frostbite or frostbite residuals. (ECF No. 86, at 101.) Additionally, while Plaintiff has submitted reports showing that the U.S. Department of Veterans Affairs has determined that Plaintiff is suffering from right and left lower extremity frostbite residuals and has been diagnosed with bilateral chilblains, the 2006 reports do not state Plaintiff has been diagnosed with peripheral neuropathy. (ECF No. 86, at 74–75, 77–80.) Indeed, these medical records conflict with the Defendants' separate and independent examination of Plaintiff in 2012 and 2013. Medical professionals are not required to accept, uncritically, a plaintiff's prior diagnosis. Prior diagnoses may inform Defendants' medical evaluations, but they are not binding on Defendants. There is nothing deliberately indifferent where a medical professional conducts his/her own evaluations and comes to a different medical conclusion. Therefore, the medical records attached to Plaintiff's opposition only establish that there is a difference of opinion between Defendants and other medical professionals concerning whether Plaintiff should be diagnosed and treated for frostbite residuals and/or peripheral

neuropathy. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (stating that a difference of opinion between medical professionals does not amount to deliberate indifference to a plaintiff's serious medical needs).

Second, Plaintiff's claim that his frostbite residual condition has now progressed to the third-degree level and that he is on the verge of paralysis or something similar because he is not receiving medical treatment is based entirely on self-diagnosis and is unsupported by any medical evidence before the Court. Plaintiff is not competent to testify to a medical diagnosis that his pain is caused by frostbite residuals and/or peripheral neuropathy and that he should be provided with specific treatment in response to that diagnosis. Plaintiff does not have medical training and is not a medical professional with such expertise. Fed. R. Evid. 701, 702. Therefore, Plaintiff's self-diagnosis and recommendation for treatment of his self-diagnosis does not establish a genuine issue of material fact that Defendants Patel and Kongara were deliberately indifferent to Plaintiff's foot pain.

Third, Plaintiff does not raise a material issue of fact regarding his pain medication. Plaintiff claims that Defendants Patel and Kongara were deliberately indifferent in treating his foot pain because the only medical treatment for his condition Defendants provided was a prescription for Tegretol. Plaintiff claims that this medication was ineffective for treating his pain. Plaintiff's allegation, however, is unsupported by any evidence that Plaintiff asked Defendant Patel and/or Kongara for other pain medications and that those requests were denied. Taylor v. List, 880 F.2d 1040, 1046 ("A summary judgment motion cannot be defeated by relying … on conclusory allegations unsupported by factual data."). In fact, the undisputed medical record before the Court establishes that, while he was at KVSP, Defendant Patel prescribed Carbamazepine, Acetaminophen, and Salsalate in order to treat Plaintiff's pain. (UMF No. 45.)

Finally, Plaintiff has not raised an issue of fact regarding refusal to refer Plaintiff to a neurologist or from Plaintiff's removal from the Disability Placement Program. Plaintiff argues that Defendants Patel and Kongara were deliberately indifferent to his frostbite residuals foot pain when Defendant Patel denied Plaintiff's requests to be referred to a neurologist and when Defendant Kongara rescinded Plaintiff's wheelchair chrono and removed Plaintiff from the Disability

Placement Program. However, it is undisputed that: (1) Defendant Patel denied Plaintiff's requests to be referred to a neurologist after examining Plaintiff, determining that the physical examination of Plaintiff's feet appeared to be normal, and discovering that there were no significant findings in the neurological examination of Plaintiff's feet; and (2) Defendant Kongara rescinded Plaintiff's wheelchair chrono and removed Plaintiff from the Disability Placement Program after evaluating Plaintiff and noting that Plaintiff was able to stand up to get his weight checked without any assistance or balance problems, that his gait was within normal limits, and that was able to kick his legs out, wriggle his toes, and move his ankle up and down. (UMF Nos. 16, 23, 28.) Therefore, while Plaintiff claims that Defendants Patel and Kongara should have provided him with different treatment for his foot pain caused by frostbite residuals – namely, a referral to a neurologist and continuation of his wheelchair chrono and his participation in the Disability Placement Program – Plaintiff has not provided the Court with any evidence showing that the course of treatment Defendants Patel and Kongara chose was "medically unacceptable under the circumstances" and that the Defendants chose the course of treatment in "conscious disregard of an excessive risk to plaintiff's health[.]" Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Therefore, at most, Plaintiff has established a difference of opinion between himself and Defendants Patel and Kongara concerning the proper diagnosis and treatment of Plaintiff's foot pain, which does not amount to deliberate indifference. Toguchi, 391 F.3d at 1058.

Consequently, Plaintiff has failed to raise a genuine dispute of material fact as to whether Defendants Patel and Kongara were deliberately indifferent in diagnosing and treating Plaintiff's foot pain. Accordingly, Defendants' motion for summary judgment should be granted as to Plaintiff's deliberate indifference claim against Defendants Patel and Kongara.

        b.    *Defendant Lopez*

In Plaintiff's second amended complaint, Plaintiff alleges that Defendant Lopez was deliberately indifferent because Defendant "CMO Lopez" "seconded, if not lead" Defendant Kongara's decision to "reject and rescind my already approved ADA status." (ECF No. 40, at 3.) Defendant Lopez argues that Plaintiff's deliberate indifference claim fails because there is an absence of evidence that Defendant Lopez was personally involved in the alleged violations.

In this case, Defendant Lopez has provided the Court with evidence showing that, at all times relevant to this action, Defendant Lopez was the Chief Medical Officer of KVSP, that Defendant Kongara worked at KVSP as a primary care provider/physician, and that S. Paeth, not Defendant Lopez, reviewed and signed the CDCR 1845 Disability Placement Program Verification form authored by Defendant Kongara, which removed Plaintiff from the Disability Placement Program. (UMF Nos. 2, 28.) The Court finds that this evidence is sufficient to shift the burden to Plaintiff to establish that Defendant Lopez was personally involved in the alleged deliberate indifference to Plaintiff's serious medical needs.

Initially, Plaintiff has not provided the Court with any evidence demonstrating that Defendant Lopez participated in, or directed, Defendant Kongara's decision to author the CDCR 1845 form that removed Plaintiff from the Disability Placement Program. The allegations in Plaintiff's second amended complaint that Defendant Lopez was personally involved in Defendant Kongara's decision to "reject and rescind" Plaintiff's "ADA status" are bare conclusions unsupported by any facts. Taylor, 880 F.2d at 1045 ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). Consequently, Plaintiff has failed to raise a genuine dispute of material fact as to whether Defendant Lopez was personally involved in Defendant Kongara's action which allegedly deprived Plaintiff of his Eighth Amendment rights. Accordingly, Defendants' motion for summary judgment should be granted as to Plaintiff's deliberate indifference claim against Defendant Lopez.

2. Retaliation

The filing of prison grievances and the pursuit of civil rights litigation against prison officials are both activities protected by the First Amendment. Rhodes, 408 F.3d at 567–68. Further, threats to file prison grievances and/or to file civil rights litigation are also activities protected by the First Amendment. Entler v. Gregoire, 872 F.3d 1031, 1039 (9th Cir. 2017). "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate

15

(2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005); accord Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012).

Causation is the linchpin of a viable First Amendment retaliation claim. See Hartman v. Moore, 547 U.S. 250, 259 (2006) (explaining that a § 1983 plaintiff "must show a causal connection between a defendant's retaliatory animus and subsequent injury in any sort of retaliation action[]"). Thus, "a plaintiff must show that his protected conduct was the substantial or motivating factor behind the defendant's conduct. To show the presence of this element on a motion for summary judgment, [Plaintiff] need only put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [Defendant's] intent" in causing the action that injured Plaintiff. Brodheim, 584 F.3d at 1271 (citations and internal quotation marks omitted). "[M]ere speculation that defendants acted out of retaliation is not sufficient." Wood v. Yordy, 753 F.3d 899, 905 (9th Cir. 2014).

In his second amended complaint, Plaintiff alleges that, after Defendant Patel denied Plaintiff's request for a neurology consult, Plaintiff told Defendant Patel that he would appeal. Defendant Patel then politely told Plaintiff, that if Plaintiff filed an appeal, Defendant Patel would take Plaintiff's wheelchair, which is exactly what happened on February 4, 2013. Defendant Patel contends that Plaintiff's retaliation claim fails because there is an absence of evidence to support Plaintiff's allegation that the alleged adverse action by Defendant Kongara on February 4, 2013 was motivated by the grievance that Plaintiff filed against Defendant Patel.

The undisputed evidence shows that, on October 10, 2012, Plaintiff submitted a CDCR 602 HC health care appeal, contending that Defendant Patel improperly denied Plaintiff's continuous requests for a referral to a neurologist. (UMF No. 19.) On February 1, 2013, Defendant Kongara examined Plaintiff, determined that Plaintiff did not need a wheelchair, and notified custody that Plaintiff could walk to his cell. (UMF No. 23.) On February 22, 2013, Defendant Kongara authored a CDCR 1845 Disability Placement Program Verification form, which stated that, since Plaintiff's claimed disability was not confirmed, Plaintiff was removed from the entire Disability Placement

Program. (UMF No. 28.) Thus, the evidence shows that Defendant Kongara removed Plaintiff's wheelchair, not Defendant Patel. Indeed, during his May 18, 2018 deposition, Plaintiff admitted that he has no personal knowledge whether Defendant Patel ever told Defendant Kongara about Defendant Patel's threat to take away Plaintiff's wheelchair, but that he believes that the threat and the removal of his wheelchair are connected because Defendant Kongara did exactly what Defendant Patel said he was going to do. (ECF No. 82-5, Defendants' Ex. B, Deposition of Danny Caesar, at 50:17–51:19.) Defendant's evidence is sufficient to satisfy Defendant Patel's initial burden. Defendant has demonstrated the lack of a factual dispute because Plaintiff has not offered evidence of an essential element of retaliation—that his protected conduct of filing the grievance against Defendant Patel was the substantial or motivating factor behind Defendant Kongara's decisions to take away Plaintiff's wheelchair and remove Plaintiff from the Disability Placement Program.

Therefore, Plaintiff must show by sufficient evidence that there is a genuine dispute of material fact regarding the causation element of his retaliation claim for trial. In his opposition, Plaintiff states: "Plaintiff is practically certain that Dr. Kongara's (*sic*) actually taking my wheelchair by rescinding my wheelchair chrono[] was simply the culmination of Dr. Patel's threat. I'm also practically certain that that is what Dr. Patel & Associates done, because of the timing, and the way it was done/is being done." (ECF No. 86, at 5.) However, Plaintiff fails to provide the Court with any evidence, other than speculation, that his wheelchair was removed based on Defendant Patel's threat, including how much time passed between Defendant Patel's threat, the filing of Plaintiff's administrative appeal, and Defendant Kongara's action to rescind Plaintiff's wheelchair chrono. Therefore, the Court cannot determine if there is a sufficiently close proximity in time from which retaliatory motive may be inferred. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001).

Further, even if Plaintiff had presented evidence showing that the timing between Defendant Patel's threat, Plaintiff's filing of his administrative appeal, and Defendant Kongara's action was close enough to infer retaliatory motive, Plaintiff has not presented any other evidence to support the inference of retaliation. Pratt v. Rowland, 65 F.3d 802, 808 (9th Cir. 1995) (stating that a

plaintiff may rely on evidence of a chronology of events as circumstantial evidence of retaliatory intent, but timing alone is insufficient to establish a genuine dispute of material fact regarding causation). Specifically, Plaintiff has not presented the Court with any evidence that Defendants Patel and Kongara ever discussed Plaintiff's medical care, the grievance that Plaintiff filed against Defendant Patel, Plaintiff's wheelchair chronos, or Plaintiff's participation in the Disability Placement Program. Additionally, there is no evidence before the Court that Defendant Kongara had any knowledge of Defendant Patel's threat and/or Plaintiff's submission of an administrative appeal against Defendant Patel before Defendant Kongara rescinded Plaintiff's wheelchair chrono and his participation in the Disability Placement Program. The evidence demonstrates that the wheelchair was removed following Defendant Kongara's examination of Plaintiff, in which Defendant Kongara found that Plaintiff did not need a wheelchair. As such, Plaintiff's contention that Defendant Kongara rescinded Plaintiff's wheelchair chrono and Plaintiff's participation in the Disability Placement Program because Plaintiff filed an administrative appeal against Defendant Patel is mere speculation that is insufficient to establish a genuine issue of material fact regarding causation. Wood, 753 F.3d at 905.

In addition to his arguments about Defendant Kongara's decision to rescind his wheelchair chrono and participation in the Disability Placement Program, Plaintiff also argues that, after Defendant Patel threatened him, he had major problems receiving dental treatment at the Santa Clara County Jail and at KVSP. It appears that Plaintiff is attempting to argue that Defendant Patel is somehow responsible for any problems that Plaintiff had with receiving treatment for his dental issues at both the Santa Clara County Jail and KVSP. However, even presuming that this new theory of retaliation is within the scope of Plaintiff's complaint, Plaintiff has not provided the Court with any evidence to support his contention that Defendant Patel is somehow responsible for Plaintiff's problems in receiving treatment for his dental problems at the Santa Clara County Jail and/or KVSP. Therefore, Plaintiff's allegations are mere speculation, which are insufficient to establish any genuine issue of material fact regarding retaliation. Id.

Consequently, Plaintiff has failed to raise a genuine dispute of material fact as to whether Defendant Patel took any adverse action against Plaintiff because of his protected conduct.

Accordingly, Defendants' motion for summary judgment should be granted as to Plaintiff's retaliation claim against Defendant Patel.

### 3. Qualified Immunity

Defendants also assert that the Court should grant summary judgment on the basis of qualified immunity. However, the Court finds that this argument need not be reached, based upon the above determination regarding the undisputed facts in this case.

## IV. Conclusion and Recommendations

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants Patel's, Kongara's, and Lopez's motion for summary judgment, (ECF No. 82), be GRANTED; and

2. That judgment be entered in favor of Defendants Patel, Kongara, and Lopez and against Plaintiff Caesar.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 15, 2019** /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE